UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STONEGARDENS ADVISORY LLC,

                                        Plaintiff,

            -v-

DEEPMEDIA.AI f/k/a ANONYMOUS A.I. INC.,

                                        Defendant.

24 Civ. 2178 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Stonegardens Advisory LLC ("Stonegardens"), a defense industry consultant,

brings this action against defendant DeepMedia.AI f/k/a Anonymous A.I. Inc. ("DeepMedia"), a

"DeepFake" detection platform. It brings claims for breach of contract, quantum meruit, and

unjust enrichment arising from DeepMedia's refusal to pay Stonegardens cash and equity

compensation, which it claims it was due under advisory services agreements between it and

DeepMedia.

DeepMedia now moves to dismiss for lack of personal jurisdiction and improper venue

pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively, and on *forum*

*non conveniens* grounds. DeepMedia alternatively moves to transfer this case to the United

States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a). For

the reasons that follow, the Court denies DeepMedia's motions.

1

## I.    Background[1]

### A.    Factual Background

#### 1.    The Parties

Stonegardens is a Delaware limited liability company with its principal place of business in New York.  Compl. ¶ 8.  Its two members, Daniel Selli and Nicholas Angerame, are domiciled in New York.  *Id.* ¶¶ 10–11.  Since 2019, Stonegardens has served as a defense industry consultant, focused on promoting emerging "deep technology companies."  *Id.* ¶ 12.

DeepMedia is a Delaware corporation, with its principal place of business in California.  *Id.* ¶ 13.  It operates a "DeepFake" detection platform to guard "against misinformation and fake identity intrusion."  *Id.* ¶ 14.  Rijul Gupta, Emma Brown, and Nikesh Kalra are, respectively, DeepMedia's chief executive officer, *id.* ¶ 32, chief operating officer, *id.* ¶ 74, and chief business officer, *id.* ¶ 63.

#### 2.    The 2020 Agreement

On December 10, 2020, DeepMedia entered into an Advisory Services Agreement with Stonegardens, Dkt. 1-1 (the "2020 Agreement"), pursuant to which Stonegardens was retained to "act as a mentor or advisor to [DeepMedia]" and "provide services which would ultimately expose DeepMedia to a greater market share and elevate the level of clientele."  Compl. ¶ 18.  Schedule A to the 2020 Agreement defined Stonegardens's responsibilities, which included brand positioning, proposal preparation, administrative support, strategy meetings, and business introductions.  *Id.* ¶ 19; 2020 Agreement at 5.  In exchange for these services, DeepMedia was to

---

[1] The following account is drawn from Stonegardens's Complaint, Dkt. 1 ("Compl."), and the factual submissions on the instant motion.  These include: Rijul Gupta's declaration in support of DeepMedia's motion, Dkt. 7-1 ("Gupta Decl."); the exhibits to Stonegardens's opposition, Dkt. 14 ("Pl. Br."); Nicholas Angerame's declaration in support of Stonegardens's opposition, Dkt. 14-1 ("Angerame Decl."); and Gupta's supplemental declaration in support of DeepMedia's motion, Dkt. 15-1 ("Gupta Supp. Decl.").

pay Stonegardens a 2% equity interest in DeepMedia, in the form of restricted common stock that would vest on a prorated basis over a 48-month period. Compl. ¶ 20; 2020 Agreement at 4. The 2020 Agreement provided for a term of one year, but it enabled the parties to "extend, amend or renegotiate the agreement as they s[aw] fit." 2020 Agreement ¶ 4.

### 3.     The 2021 Amendment to the 2020 Agreement

On June 29, 2021, DeepMedia and Stonegardens amended the 2020 Agreement. Compl. ¶ 37; Dkt. 1-2 (the "2021 Amendment"). The amendment modified the equity-only compensation arrangement, reducing Stonegardens's 2% equity interest to a 0.5% equity interest (50,000 common shares) to be vested on a monthly pro rata basis over 24 months, and providing for monthly cash compensation. Compl. ¶ 38; 2021 Amendment ¶ 1–2. The amendment also specified that Stonegardens would receive a "finders/success fee on any amount, profit or otherwise, deriving from referred business or opportunities," valued at 8% percent of the estimated business value and capped at $10,000,000. Compl. ¶ 38; 2021 Amendment ¶ 1. All other terms and conditions of the 2020 Agreement were "ratified and affirmed." Compl. ¶ 40; 2021 Amendment at 1.

### 4.     The 2022 Agreement

On March 14, 2022, DeepMedia entered into a second Advisory Services Agreement with Stonegardens. Compl. ¶ 45; Dkt. 1-3 (the "2022 Agreement"). It expanded Stonegardens's scope of work from "a limited number of Air Force proposals to unlimited submissions across the [Department of Defense]." Compl. ¶ 45. The 2022 Agreement contemplated services including, but not limited to, developing government submissions, cultivating business relationships, and managing professional projects. *Id.* ¶ 46; 2022 Agreement at 5. In exchange, DeepMedia would pay Stonegardens $3,250 a month, plus the equity and cash compensation and any applicable finder's fees, as detailed in the 2021 Amendment to the 2020 Agreement. Compl.

¶ 47. The 2022 Agreement was considered a stand-alone agreement, separate from the amended 2020 Agreement. *Id.* ¶ 48. It provided for a term of one year, but permitted the parties to "extend, amend, or renegotiate" the contract. 2022 Agreement ¶ 4.

### 5.    Stonegardens's Performance under the Agreements

Pursuant to the agreements, Stonegardens scheduled presentations and meetings designed to introduce DeepMedia to key individuals working at or associated with, among others, the United States Department of Defense, the United States Army, the United States Air Force, the National Air and Space Intelligence Center, and Wall Street investment funds. Compl. ¶ 32. Stonegardens also arranged opportunities for DeepMedia to increase its publicity through addresses at the United Nations General Assembly and interviews with the *Wall Street Journal* and *Fox Business*. *Id.* ¶ 33. Stonegardens alleges that, as a result of its assistance, DeepMedia successfully developed several business relationships, including a multi-million dollar contract with the U.S. Air Force Research Laboratory; a Teaming Agreement with the University of Buffalo; and retention of former Staten Island Congressman Daniel Donovan as a DeepMedia advisor and board member. Angerame Decl. ¶¶ 12, 43–45.

As Stonegardens performed its contractual obligations, it sent DeepMedia its invoices through Bill.com, an electronic billing service that requires the receiving company to review and verify invoice terms prior to remitting payment. Compl. ¶ 58. DeepMedia paid Stonegardens for services rendered in connection with more than 30 invoices covering December 2020 through December 2023. *Id.* ¶ 57. Each invoice listed Stonegardens's New York billing address. Angerame Decl. ¶¶ 25, 36.

### 6.    DeepMedia's Suspension of Service

On December 30, 2023, DeepMedia's chief operating officer, Brown, notified Stonegardens that DeepMedia was "developing [its] 2024 plan and re-crafting GTM," and, as a

result, was "re-evaluating all vendors," "pausing all contracts," "cancel[ing] our regular calls, hold[ing] all work and suspend[ing] billing/payments." Compl. ¶ 61; Pl. Br., Ex. 7 at 18. Shortly thereafter, in or about January 2024, DeepMedia's chief business officer, Kalra, advised Stonegardens that "DeepMedia was experiencing financial difficulties" and "temporarily 'pausing all contracts' and 'ceasing all vendor agreements,' including DeepMedia's agreements with Stonegardens, in an attempt to right its finances." Compl. ¶¶ 63–64. Kalra also acknowledged, Stonegardens alleges, that "Stonegardens had driven the vast majority of DeepMedia's revenue and success to date and, as a result, represented and promised that DeepMedia would deliver to Stonegardens a repayment plan, asking for discounts, haircuts and waivers of various fees owed." *Id.* ¶ 65. Stonegardens agreed to give DeepMedia additional time to draft and present the repayment offer, but, despite Stonegardens's repeated requests, "DeepMedia never transmitted a repayment plan or offer." *Id.* ¶¶ 67–68.

### B.    Procedural History

On March 22, 2024, Stonegardens filed the Complaint, which brought claims of contract breach and in quasi-contract. Dkt. 1 ("Compl."). On May 6, 2024, DeepMedia filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), for improper venue under Rule 12(b)(3), and for *forum non conveniens*, Dkt. 7 ("Def. Br."); and a supporting declaration, Gupta Decl. On May 26, 2024, Stonegardens filed an opposing memorandum of law with annexed exhibits, Pl. Br., and a declaration, Angerame Decl. On June 10, 2024, DeepMedia filed a reply, Dkt. 15 ("Def. Reply"), and supplemental declaration, Gupta Supp. Decl.

## II.    DeepMedia's Motion to Dismiss for Lack of Personal Jurisdiction

### A.    Applicable Legal Standards

#### 1.    General Principles

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)); *see In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Where, as here, discovery has not yet commenced, the plaintiff need only put forth "legally sufficient allegations of jurisdiction" to survive a motion to dismiss for lack of personal jurisdiction. *Id.*

A plaintiff may make this showing through its "own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d 123 at 138); *see A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as

6

true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673

(citation omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59

(2d Cir. 2012).

To make out a *prima facie* case of personal jurisdiction, whether based on general or

specific personal jurisdiction, plaintiffs must establish both a statutory basis for jurisdiction and

that exercise of such jurisdiction accords "with constitutional due process principles." *Cortlandt*

*St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 Civ. 1568, 2015 WL 5091170,

at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y.

2014)).  General personal jurisdiction subjects a defendant to suits on all claims.  *Id.*; *see also*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Specific personal

jurisdiction subjects a defendant to suits only on claims that arise from the defendant's conduct

in the forum.  *Cortlandt*, 2015 WL 5091170, at *2; *see also Daimler AG v. Bauman*, 571 U.S.

117, 127 (2014).

### 2.    General Jurisdiction

In New York courts, general jurisdiction is exercised pursuant to C.P.L.R § 301.  *See*

*State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880, 887 (S.D.N.Y. 2017).

Under C.P.L.R § 301, jurisdiction is proper when "a company 'has engaged in such a continuous

and systematic course of "doing business" [in New York] that a finding of its "presence" [in

New York] is warranted.'" *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224

(2d Cir. 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33

(1990)) (alterations in original); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95

(2d Cir. 2000).

The Due Process Clause of the Fifth Amendment, however, is more restrictive.  A court

may exercise general jurisdiction over foreign corporations only "when their affiliations with the

State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires*, 564 U.S. at 919. "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home," and, thus, amenable to general personal jurisdiction, "only where it is incorporated or maintains its principal place of business—the paradigm cases." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (citation omitted).

### 3.    Specific Jurisdiction

In New York, specific jurisdiction is exercised pursuant to C.P.L.R. § 302. *See Swizz Style*, 246 F. Supp. 3d at 887. It provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . [that] transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302.

For personal jurisdiction to exist under § 302(a)(1), "two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Barrett v. Tema Development (1988), Inc.*, 251 F. App'x 698, 700 (2d Cir. 2007) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). The Court's primary consideration is "the quality of the defendants' New York contacts." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). In a proper case, a single act within New York can satisfy the requirements of § 302(a)(1); where that is not so, "an ongoing course of conduct or relationship in the state may." *Licci*, 673 F.3d at 62. In making the § 302(a)(1) determination, courts take a holistic, totality of the circumstances approach. *See, e.g., id.* (quoting *Farkas v. Farkas*, 36 A.D.3d 852, 853 (2d Dep't 2007)); *Bank Brussels Lambert*, 171 F.3d at 787. As for the due process standard, "[b]ecause CPLR 302 does not reach as far as the constitution permits, if a defendant is amenable to long-arm jurisdiction in New

York, the constitutional standard is satisfied." *Vasquez v. Torres Negron*, 434 F. Supp. 2d 199,

201 (S.D.N.Y. 2006).

The Second Circuit has identified four factors to guide the § 302(a)(1) inquiry in cases

sounding in breach of contract. They are:

> (i)    whether the defendant has an on-going contractual relationship with a New York corporation;
>
> (ii)   whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;
>
> (iii)  what the choice-of-law clause is in any such contract; and
>
> (iv)   whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A*

*Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). Another important

factor is whether the contract is to be performed in New York. *See Cooper, Robertson &*

*Partners, L.L.P. v. Vail*, 143 F. Supp. 2d 367, 371 (S.D.N.Y. 2001) ("In determining jurisdiction,

the place of performance is more critical than the place of the execution of a contract." (citation

omitted)). Because the test turns on the totality of the circumstances, "no one factor is

dispositive" and "[o]ther factors may also be considered." *Agency Rent A Car Sys.*, 98 F.3d

at 29.

## B.    Discussion

Stonegardens has not established general jurisdiction over DeepMedia. The Complaint

does not allege that DeepMedia is a New York citizen. On the contrary, it alleges that

DeepMedia is incorporated in Delaware with its principal place of business in California.

Compl. ¶ 13. Nor does the Complaint allege that DeepMedia is registered to do business in New

York or has telephone listings, offices, bank accounts, or other property in New York. Of DeepMedia's employees, Stonegardens identifies only one allegedly based in New York. Pl. Br. at 5 n.16. And apart from the conclusory allegation that "DeepMedia, upon information and belief, transacts business within the State of New York," the Complaint does not allege that DeepMedia was present in New York with a fair degree of permanence and continuity. Compl. ¶ 6. Unsupported by any particulars, the Complaint's generalized claim of continuing and systematic business transactions must be set aside. The burden is on the plaintiff to establish jurisdiction, and "allegations or evidence of activity constituting the basis of jurisdiction must be non-conclusory and fact-specific." *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 290 (S.D.N.Y. 2019); *see Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (noting need for "factual specificity necessary to confer jurisdiction"). Stonegardens has not made that showing here.

Stonegardens has, however, successfully alleged specific jurisdiction.

As to the four-factor balancing test guiding the statutory inquiry under § 302(a)(1), the first factor—whether DeepMedia had an ongoing contractual relationship with a New York corporation—is easily met. Stonegardens contends that in or about December 2020, DeepMedia retained Stonegardens, a New York limited liability company,[2] to serve as its advisor and assist DeepMedia in securing funding, capital, and clientele. Compl. ¶¶ 18–22. That relationship continued through at least December 2023, when DeepMedia notified Stonegardens that it "was temporarily 'pausing all contracts' and 'ceasing all vendor agreements,' including DeepMedia's

---

[2] For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a), on which Stonegardens proceeds here, limited liability companies take the citizenship of its members. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). Because Selli and Angerame reside in New York, Stonegardens is considered a New York citizen.

agreements with Stonegardens, in an attempt to right its finances." *Id.* ¶ 64. Stonegardens further alleges that, during its three-year contractual relationship with DeepMedia, it maintained its principal place of business in Manhattan. Angerame Decl. ¶ 9. Evidence of the continuing nature of this relationship is supplied by email messages between executives of the two companies, which span from February 2022 through January 2024. Pl. Br., Exs. 7–8.

As to the second factor, the location of contract negotiation and execution, Stonegardens does not allege that either occurred in New York or that DeepMedia traveled to New York during the contract formation period. It does, however, allege that it performed most of its contracted-for services from New York, and that DeepMedia traveled to New York and entered into New York-based business relationships in connection with its services. Pl. Br. at 10–11. And, Stonegardens explains, DeepMedia had to appreciate that Stonegardens was performing from New York, including because DeepMedia engaged in weekly strategy calls, bi-weekly customer calls, and numerous videoconferences with its New York personnel, Angerame Decl. ¶¶ 11, 20; and because Stonegardens's emails, Pl. Br., Exs. 7–8, invoices, *id.*, Ex. 9, and website, *id.*, Ex. 6, all bore its New York address, Angerame Decl. ¶ 11. DeepMedia personnel also came to New York in connection with services that Stonegardens provided, including when Stonegardens arranged for Gupta, DeepMedia's CEO, to address the U.N. General Assembly and to interview with the *Wall Street Journal* in New York. *Id.* ¶ 13. DeepMedia also entered into business relationships with New York-based persons or entities[3]—*e.g.*, the U.S. Air Force Research Lab, *id.* ¶¶ 12, 43, 51, 59–62, the University of Buffalo, *id.* ¶¶ 12, 44, 51, and former

---

[3] DeepMedia argues that several such activities do not constitute engaging in "business" because they did not generate revenue. *See* Def. Reply at 9. The Second Circuit, however, has held "that non-commercial activity may qualify as the 'transaction of business'" for purposes of personal jurisdiction under C.P.L.R. § 302(a)(1). *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007).

Staten Island Congressman Daniel Donovan, *id.* ¶¶ 12, 45, 51, 54–56—as a result of Stonegardens's work pursuant to the parties' agreements, *id.* ¶¶ 12, 43–45, 50–81 (listing DeepMedia's business transactions resulting from Stonegardens's assistance). The second factor is thus satisfied.

The third factor is not satisfied. Both agreements include choice-of-law provisions providing that California law would govern the contracts. Pl. Br., Ex. 2 ¶ 13; *id.*, Ex. 4 ¶ 12. Although not dispositive, "[a] choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of [California] law." *Sunward Elecs.*, 362 F.3d at 23.[4] This factor disfavors exercise of specific jurisdiction.

As to the fourth factor, Stonegardens has not alleged that DeepMedia was contractually obliged to send notices into New York, or that DeepMedia was subject to supervision in New York. But Stonegardens does allege that it sent DeepMedia invoices, which listed its Manhattan billing address, through Bill.com, an online billing service. Compl. ¶ 58; Angerame Decl. ¶¶ 11, 36. And it represents that it used its Manhattan address for its "tax, financial," "billing," and "limited-liability-company constitutional document filings." Angerame Decl. ¶¶ 11, 25, 36. Payments into the forum state can represent a "significant contact." *First City Fed. Sav. Bank v. Dennis*, 680 F. Supp. 579, 586 (S.D.N.Y. 1988) (citation omitted). To be sure, "communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it under Section 302(a)(1)." *Hau Yin To v. HSBC Holdings PLC*, No.

---

[4] Neither contract included a venue provision, although DeepMedia represents that it subjectively "understood any disputes would be resolved in California." Gupta Decl. ¶ 13.

15 Civ. 3590, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017).  But here, Stonegardens alleges that DeepMedia had more significant contacts than that, in that its representatives also visited New York.  *See* Compl. ¶¶ 6–7; Angerame Decl. ¶¶ 30, 34, 78.  This factor, on balance, supports Stonegardens's claim of specific jurisdiction.

In sum, three of the four factors support finding that DeepMedia transacted business in New York.  In weighing these factors, a court must consider the "totality of the circumstances," *Farkas*, 36 A.D.3d at 853, mindful that "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci*, 673 F.3d at 61 (citation omitted). Here, DeepMedia took such an act:  It retained a New York limited liability company to facilitate business between it and other New York entities.  Stonegardens has thus established that its advisory services—performed in New York and with New York-based entities for Deep Media's benefit—"constituted *the* transaction of business." *John Wiley & Sons, Inc. v. Treeakarabenjakul*, No. 9 Civ. 2108, 2009 WL 1766003, at *4 (S.D.N.Y. June 18, 2009) (emphasis in original).

To establish specific jurisdiction, Stonegardens must also show that its claims here arise from the "[a]ct[s] which are the basis of jurisdiction." C.P.L.R. § 302(a).  "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. I.N.S.*, 157 F.3d 106, 123 (2d Cir. 1998) (citation omitted).  In contrast, "[a] connection that is 'merely coincidental' is insufficient to support jurisdiction." *Sole Resort*, 450 F.3d at 103 (quoting *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005)).

Stonegardens easily clears this bar. Its breach of contract, quantum meruit, and unjust enrichment claims are all explicitly based on DeepMedia's failure to pay Stonegardens for contractual services it performed in New York, including facilitating DeepMedia's business relationships in New York. *See, e.g.*, Compl. ¶ 6 ("DeepMedia purposefully transacted business in New York by retaining Stonegardens, establishing a continuing contractual relationship with Stonegardens, in which the business activities that give rise to this action were conducted within both the State of New York and . . . the Southern District of New York."); Angerame Decl. ¶ 12 ("Often through Stonegardens' introductions and efforts, DeepMedia entered into business relationships with New York based persons or entities[,]" including with "Deroy Murdock of Fox Business" and "Arcis Capital, a New York City[-]based investment fund"). On the basis of these allegations, Stonegardens's claims against DeepMedia result from the conduct that gives rise to personal jurisdiction.

New York's long-arm statute thus authorizes exercise of jurisdiction over DeepMedia.

Finally, the exercise of jurisdiction here accords with due process. As noted, compliance with the specific jurisdiction requirements of New York's long-arm statute necessarily reflects compliance with due process, as that statute "does not extend in all respects to the constitutional limits." *Licci*, 673 F.3d at 60–61.

In all events, the facts adduced comfortably satisfy both the minimum-contacts and reasonableness due process inquiries. *See Bank Brussels Lambert*, 305 F.3d 120, 127 (2d Cir. 2002). The minimum-contacts inquiry examines whether the defendant "'purposefully availed itself' of the privilege of doing business in the forum state and could 'reasonably anticipate being haled into court there.'" *Pearson Educ. v. Shi*, 525 F. Supp. 2d 551, 557 (S.D.N.Y. 2007) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985)). DeepMedia did

so here, by retaining a New York entity (Stonegardens) for business-development services that it
performed in New York, and that resulted in DeepMedia negotiating and executing business
transactions in New York. *See, e.g.*, *Sunward Elecs.*, 362 F.3d at 21–23 (finding personal
jurisdiction over defendants that had an active agreement with a New York corporation, paid for
products from that entity, and traveled to New York in furtherance of that relationship);
*Fischbarg*, 9 N.Y.3d at 380–84 (finding personal jurisdiction over defendants who solicited the
services of a New York attorney, contracted with that attorney, and "communicated regularly
with him in the state" through electronic and telephonic means).

 The reasonableness inquiry examines whether, notwithstanding minimum contacts, the
defendant can present a "compelling case that the presence of some other considerations would
render jurisdiction unreasonable," *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560,
568 (2d Cir. 1996) (quoting *Burger King*, 471 U.S. at 477), such that the assertion of jurisdiction
does not "comport[] with 'traditional notions of fair play and substantial justice.'" *Chatwal
Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 107 (quoting *Int'l Shoe Co. v. State
of Washington*, 326 U.S. 310, 316 (1945)). The Court weighs five factors when determining
reasonableness:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the
> interests of the forum state in adjudicating the case; (3) the plaintiff's interest in
> obtaining convenient and effective relief; (4) the interstate judicial system's interest
> in obtaining the most efficient resolution of the controversy; and (5) the shared
> interest of the states in furthering substantive social policies.

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164–65 (2d Cir. 2010) (quoting *Asahi
Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113–14 (1987)). These factors make it entirely
reasonable to exercise jurisdiction over DeepMedia here. Having entered into a contract with a
New York entity to help it generate business and clients, and having then engaged in numerous
business transactions in New York that came about as a result of contractual services performed

by Stonegardens in New York, DeepMedia reasonably would have expected to be subject to suit in New York by Stonegardens if it breached the agreements.

The exercise of personal jurisdiction here thus is proper.

## III. DeepMedia's Motion to Dismiss for Improper Venue

### A. Applicable Legal Standards

The plaintiff also "bears the burden of demonstrating that [its] chosen venue is proper." *Vann v. Fischer*, No. 11 Civ. 1958, 2012 WL 2384428, at *4 (S.D.N.Y. June 21, 2012). In ruling on a motion to dismiss for improper venue under Rule 12(b)(3), the Court accepts as true all factual allegations in the non-moving party's pleadings and draws all reasonable inferences in that party's favor. *See Blakely v. Lew*, No. 13 Civ. 2140, 2013 WL 6847102, at *1 (S.D.N.Y. Dec. 30, 2013). On a motion under Rule 12(b)(3), as under Rule 12(b)(2), the Court may consider materials outside the pleadings. *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]." *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543 (E.D.N.Y. 2011) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)).

### B. Discussion

Where the plaintiff brings a civil action in a district other than the one where any defendant lives, venue is proper if "a substantial part of the events or omissions giving rise to the claim occurred" in that judicial district. 28 U.S.C. § 1391(b)(2). Stonegardens has made the required *prima facia* showing of proper venue here. As alleged, it principally performed its advisory services for DeepMedia in Manhattan, which is within this District. These services resulted in business relationships for DeepMedia with New York-based entities. And, as a result

16

of Stonegardens's services, Compl. ¶¶ 6–7, DeepMedia visited Manhattan to transact business,

Angerame Decl. ¶¶ 73, 78–79, entered into business relationships with Manhattan entities, *see,*

*e.g., id.* ¶¶ 53, 57, 67, and directed payment, through Bill.com, to Stonegardens's Manhattan

address, *id.* ¶ 36. These allegations establish a substantial nexus between Stonegardens's claims

and this forum. Venue in this District is proper under § 1391(b)(2).

## IV.      DeepMedia's Motion to Dismiss on *Forum Non Conveniens* Grounds

### A.      Applicable Legal Standards

"The doctrine of *forum non conveniens* is a discretionary device permitting a court in rare

instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over

the claim." *Glob. Art Exhibitions, Inc. v. Kuhn & Bulow Italia Versicherungsmakler GmbH*, 607

F. Supp. 3d 421, 436 (S.D.N.Y. 2022) (quoting *Carey v. Bayerische Hypo–Und Vereinsbank AG*,

370 F.3d 234, 237 (2d Cir. 2004)); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (noting

that the court may decline to exercise jurisdiction in "exceptional circumstances"). The Second

Circuit set out a three-step process to guide a district court's discretion in deciding whether to

grant a motion to dismiss for *forum non conveniens*:

> At step one, a court determines the degree of deference properly accorded the
> plaintiff's choice of forum. At step two, it considers whether the alternative forum
> proposed by the defendants is adequate to adjudicate the parties' dispute. Finally,
> at step three, a court balances the private and public interests implicated in the
> choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

A defendant "ordinarily bears a heavy burden" when invoking *forum non conveniens.*

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Dismissal is

warranted "only if the chosen forum is shown to be genuinely inconvenient and the selected

forum significantly preferable." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74–75 (2d Cir.

2001). Motions to dismiss for *forum non conveniens* have largely been replaced by motions to

transfer venue under 28 U.S.C. § 1404 except under specific circumstances. *See Rosenman & Colin LLP v. Sandler*, No. 1 Civ. 7123, 2002 WL 83657, *3 (S.D.N.Y. Jan. 18, 2002) ("[S]ince the enactment of 28 U.S.C. § 1404, it is only when the more convenient forum is in a foreign country—or, perhaps, under rare circumstances, in a state court or a territorial court—that a suit brought in a proper federal venue can be dismissed on grounds of *forum non conveniens*.") (quoting *Schechter v. Tauck Tours, Inc.*, 17 F.Supp.2d 255, 258 (S.D.N.Y. 1998))). A court deciding a motion to dismiss for *forum non conveniens* "may consider the pleadings as well as affidavits from both moving and opposing parties." *Glob. Art Exhibitions*, 607 F. Supp. 3d at 436 (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014)).

### B.    Discussion

At the first step of the analysis, courts give a high degree of deference to the plaintiff's choice of forum, particularly when the plaintiff has sued in its home forum. *Iragorri*, 274 F.3d at 70–71. The level of deference is also strengthened by "the plaintiff's or the lawsuit's bona fide connection . . . to the forum of choice." *Id.* at 72 (citation omitted). Here, Stonegardens's choice to sue in this District merits great deference, because its principal place of business is in Manhattan, and its claims arise from business activities here. Compl. ¶¶ 6–8. This deference "recalibrate[s] the balance for purposes of the remaining analysis," raising the bar that DeepMedia must clear at steps two and three. *Norex Petroleum*, 416 F.3d at 157.

At the second step, the Court considers whether the Northern District of California, where DeepMedia proposes to try this case, is an adequate alternative forum for the dispute. "An alternate forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Both conditions are met here. DeepMedia's principal place of business is in Oakland,

18

within the Northern District of California, Compl. ¶ 13, and DeepMedia is willing to submit to that forum's jurisdiction, Def. Reply at 3, 11. And Stonegardens's contract-law claims could be tried in that district.

At the third step, the Court balances the public and private interests implicated by the choice of forum. *Norex*, 416 F.3d at 153. "The defendant bears the burden of establishing . . . that the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

Private interest factors include (1) "the relative ease of access to sources of proof"; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) "all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 508). These factors are neutral. The parties' sources of proof are concentrated in New York and California, Angerame Decl. ¶ 86; Gupta Supp. Decl. ¶ 16; they have identified approximately the same number of non-party witnesses in the two states.[5] DeepMedia does not contend that the Northern District of California would have a greater ability than this Court to secure evidence from non-parties through compulsory process.[6] The cost of obtaining testimony from willing witnesses is, in the era of modern communications and transportation technology, a relatively minor factor. *See Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 15 Civ. 2739, 2020 WL 3034824, at *11 n.11 (S.D.N.Y. June 5, 2020) ("[D]epositions can be

---

[5] DeepMedia identifies eight California-based witnesses. Gupta Supp. Decl. ¶ 16. Stonegardens represents there are at least seven New York-based witnesses. Angerame Decl. ¶ 86.

[6] The ability to obtain documentary evidence and testimony from the parties is of little concern. *See Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) ("[P]arties can compel the testimony of their own employees without the need for subpoena.").

conducted via videoconference; documents located overseas can be uploaded easily and reviewed by the parties via e-discovery platforms; and, if it comes to it, the parties can request that the Court allow trial witnesses to testify via video pursuant to the good cause exception in Fed. R. Civ. P. 43."). And both parties are technologically capable corporate entities that have not identified financial difficulties proceeding in its adversary's preferred venue. Accordingly, the private factors are neutral.

The public interest factors are "court congestion, interest of forums in deciding local disputes, and interest in issues of foreign law being decided by foreign tribunals." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998) (citing *Gulf Oil*, 330 U.S. at 508–09). These factors are largely neutral, too. Court congestion, the first factor, does not materially favor either side. This District is known to have a busy yet efficient docket, *see Glob. Art Exhibitions*, 607 F. Supp. 3d at 440, and DeepMedia does not contend that the docket in the Northern District of California is less congested. As to the forums' interest in this matter, New York and California have commensurate interests in litigation concerning an entity headquartered, and events transpiring, within its borders. Stonegardens, based in Manhattan, alleges that key events giving rise to its claims occurred in New York, Compl. ¶ 7, whereas DeepMedia, based in Oakland, points to acts and omissions in California, Def. Br. at 19. The third factor, however, slightly favors dismissal, in that, under the parties' agreements, California law applies to this dispute. But that factor merits little weight. Courts in this district frequently apply California law, and there has not been any suggestion that the legal issues apt to arise here will be other than quotidian. *See S–Fer Int'l, Inc. v. Paladion Partners*, Ltd., 906 F. Supp. 211, 215–16 (S.D.N.Y. 1995) (holding that if California law applied, a New York court would be

"capable of applying it" to the "relatively unexceptional questions of contract"). The public interest factors thus weigh only ever so slightly in favor of dismissal.

All relevant factors considered, including the high deference owed to the plaintiff's choice of forum, DeepMedia has not shown that the balance of private and public factors weighs heavily in favor of dismissal. The Court denies the motion to dismiss for *forum non conveniens*.

## V.      DeepMedia's Motion to Transfer Venue

The Court, finally, considers DeepMedia's motion to transfer venue to the Northern District of California, where it is headquartered.

### A.      Applicable Legal Standards

A party seeking transfer "carries the 'burden of making out a strong case for transfer.'" *N.Y. Mar. & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). To prevail, the moving party must make a "clear and convincing" showing that transfer is proper. *See id.* at 113–14; *see also Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 600 (S.D.N.Y. 2009); *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989) ("The moving party must make a clear-cut showing that transfer is in the best interests of the litigation.").

Courts undertake a two-step inquiry to decide motions to transfer venue under § 1404(a). *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013). At the first step, the Court must determine "whether the action could have been brought in the transferee district." *Id.* (quoting *Robertson v. Cartinhour*, No. 10 Civ. 8442, 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)). If so, the Court then must determine "whether transfer would be an appropriate exercise of the Court's discretion." *Everlast*, 928 F.

Supp. 2d at 743 (quoting *Robertson*, 2011 WL 5175597, at *3). This second step entails

weighing the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location
> of relevant documents and relative ease of access to sources of proof, (4) the
> convenience of parties, (5) the locus of operative facts, (6) the availability of
> process to compel the attendance of unwilling witnesses, and (7) the relative means
> of the parties.

*Lafarge*, 599 F.3d at 112 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d

Cir. 2006)). Of these, the Court's principal consideration is "the convenience of parties and

witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The moving party must show by clear

and convincing evidence that these seven factors favor the new venue. *Lafarge*, 599 F.3d at

113–14. Otherwise, the action must be maintained in this District. *See id.* A district court has

broad discretion when deciding a motion to transfer venue. *N.Y. Mar. & Gen. Ins. Co. v. Lafarge

N.A., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

## B.  Discussion

The first step is easily satisfied. There is no question that DeepMedia could have brought

this action in the Northern District of California. It is headquartered in Oakland, Compl. ¶ 13,

which is within that district, and venue is proper in "a judicial district in which any defendant

resides, if all defendants are residents of the State in which the district is located." 28 U.S.C.

§ 1391(b)(1).

The Court therefore applies the multi-factor balancing test. Stonegardens's choice of

forum weighs heavily against transfer, and the remaining factors, consistent with the discussion

above, are neutral or nearly so.

### 1.    Factor Favoring New York: Plaintiff's Choice of Forum

Stonegardens's choice of forum merits considerable weight, particularly because New

York is its home forum. *See Pollux Holding*, 329 F.3d at 71; *Guidi v. Inter–Continental Hotels*

*Corp.*, 224 F.3d 142, 146 (2d Cir. 2000); *SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372, 2013 WL 3467030, at *11 (S.D.N.Y. July 10, 2013) ("A plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test."). This factor strongly favors denying the motion to transfer.

### 2.    Neutral Factor: The Locus of Operative Facts

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (citation omitted). This factors heavily favors transfer from this district when a party "has not shown that any of the operative facts arose in the Southern District of New York." *Dr. Boy GmbH v. Nationwide Ins.*, No. 96 Civ. 3217, 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996). A transfer to a district where the key operative events occurred serves "the interests of justice." *Cohn v. Metro. Life Ins., Co.*, No. 7 Civ. 928, 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) ("[W]here there is no material connection between this district and the operative facts[,] the interests of justice require the transfer of the action." (citation omitted)).

"To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96 Civ. 8323, 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (citation omitted). In a breach-of-contract case, the focus is on the locations "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 8 Civ. 8106, 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009) (quoting *Reinhard v. Dow Chemical Co.*, No. 7 Civ. 3641, 2007 WL 2324351, at *6 (S.D.N.Y. Aug. 13, 2007)). A court "may determine that there are several loci of operative facts." *Adams v. Key Tronic Corp.*, No. 94 Civ. A0535, 1997 WL 1864, at *4 n.1 (S.D.N.Y. Jan. 2, 1997).

Here, substantial events occurred in New York. In particular, Stonegardens's contractual performance was centered in New York, including from its New York office, from which, as pled, Stonegardens met its contractual duties to help DeepMedia secure business, including from New York entities. *See* Compl. ¶ 7 (alleging that a "substantial part of the events or omissions giving rise to [its] claims against DeepMedia occurred within [this District]."); Gupta Supp. Decl. ¶¶ 6–15 (DeepMedia executive, not disputing that DeepMedia entered into business relationships with New York entities resulting from Stonegardens's efforts). DeepMedia's breach, in failing to furnish required payments to Stonegardens, can also be viewed as occurring in Manhattan (as well as in Oakland).

At the same time, substantial events occurred in Oakland, including, up to the point of its alleged breach, DeepMedia's performance. And, DeepMedia argues, the acts and omissions on its part that form the basis of Stonegardens's claims "would have occurred in California where Deep Media is headquartered," Def. Br. at 19, as its officials "never traveled to New York to visit Stonegardens' headquarters" once the contract was underway, whereas "Stonegardens[] visited Deep Media on multiple occasions in . . . Oakland," *id.* at 14.[7]

The operative facts appear to have centered in both parties' headquarters, *i.e.*, in both Manhattan and Oakland, and in roughly similar proportion. This factor is therefore neutral.

### 3.  Neutral Factor: Location of Witnesses

The parties have alleged approximately the same number of fact witnesses residing in their respective home states. *Compare* Gupta Supp. Decl. ¶ 16 (eight witnesses), *with* Angerame Decl. ¶ 86 (at least seven witnesses). And the nature of Stonegardens' claims, which appears

---

[7] Neither side has made any showing as to where the parties' agreements were negotiated or executed.

largely to turn on whether it performed, and, if so, whether DeepMedia paid Stonegardens as contractually required, does not appear likely to require extended testimony or testimony from a large number of witnesses.[8] The factor of convenience of witnesses thus does not materially favor either side.

### 4.    Remaining Factors: All Neutral

The remaining factors do not materially favor either side.

The factor of availability of process to compel the attendance of unwilling witnesses is neutral. Neither party has identified particular witnesses likely to present attendance challenges, or asserted that the Northern District of California would have a greater ability than this Court to secure testimony from witnesses through compulsory process.

The location of relevant documents is also a non-issue. Neither party has pressed the point. And in an era of electronic maintenance and transmission of discovery, this factor is of limited importance. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.").

The factors of convenience to the parties and the parties' relative means are also neutral. Neither party has identified concrete impediments to its participating in litigating in the other's preferred forum or undue financial hardship from having to do so. On the contrary, each company has sent personnel to the other party's forum state. *See* Def. Br. at 14; Pl. Br. at 6.

---

[8] Only Stonegardens detailed the testimony of the witnesses it anticipated calling, *see* Angerame Decl. ¶ 86, and neither party described why particular witnesses would be inconvenienced by having to travel to the other's preferred forum, *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208–09 (S.D.N.Y. 1998) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a).").

### 5.    Overall Assessment

On balance, therefore, one factor strongly disfavors transfer—the plaintiff's choice of forum—and the others are neutral or close to it.  The balance of factors thus does not clearly favor transfer or show that transfer is needed to further "the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The Court therefore denies the motion to transfer venue.  *See, e.g.*, *E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18 Civ. 3217 (PAE), 2018 WL 6528496, at *12 (S.D.N.Y. Dec. 12, 2018) (denying motion to transfer where locus of operative facts favored transfer, plaintiff's choice weighed against transfer, and all other factors were neutral); *Hershman*, 658 F. Supp. 2d at 603 (same).

### CONCLUSION

For the foregoing reasons, the Court denies DeepMedia's motions to dismiss and to transfer venue.  The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 7 and 16.

By separate order today, the Court will schedule an initial conference and a deadline for submission of a proposed case management plan that provides for the close of fact discovery by the end of April 2025.

SO ORDERED.

*Paul A. Engelmayer*

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 9, 2024
      New York, New York

26